[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The central issue in this case is the extent to which the provisions of an overlease between the plaintiff, Werner 
Kennedy, as tenant and Stamford New-Urban Associates as landlord are incorporated into a sublease between the plaintiff and the defendant Mark Stern. The original lease was dated April 14, 1987, and relates to office space on the fifth floor of 6 Stamford Forum in Stamford. The tenant was a law firm, Werner, CT Page 3810 Kennedy French, which is now known as Werner Kennedy, the plaintiff in this action. The sublease with the defendant, also a lawyer, was for one year and commenced on November 1, 1987, and involved a portion of the premises leased by the plaintiff.
The key features of the sublease, which are at issue in this case, is section 8, which provides that "[t]he Sublease is subject to the Over-Lease;" section 11, which provides that "[t]he provisions of the Over-lease are part of this Sublease and All the provisions of the Over-Lease applying to the Overtenant are binding on you. the Undertenant;" and section 5 of a rider to the sublease, which provides that "[i]f Undertenant holds over his tenancy or otherwise fails to vacate at the end of the term . . . then the lease will automatically be renewed at an annual rent of $26,250 . . ." The two provisions of the overlease, which the plaintiff contends have been incorporated into its sublease with the defendant, are section 1.06, which provides for interest at prime plus 2% for unpaid rent, and section 30.01, which provides that the landlord is entitled to recover from the tenant reasonable counsel fees incurred in collecting unpaid rent.
The plaintiff alleges in its amended complaint dated December 3, 1993, that the defendant held over after November 1, 1988, and failed to pay both the base rent at the increased rate for a hold over tenant, the additional rent for a servicing fee, and a charge for the use of certain office machines. In its prayer for relief, the plaintiff sought unpaid rent, interest thereon and attorney's fees. In addition to denying the material allegations of the complaint, the defendant filed fifteen special defenses and a counterclaim. These special defenses and counterclaim allege that the plaintiff had failed to provide him with access to library facilities as promised; that the plaintiff falsely represented to him that he would be provided with a library, a receptionist, and other services; that the sublease violates the statute of frauds; that the plaintiff is estopped from pursuing its claims because of its own improper conduct and unclean hands; that the sublease is the result of a mutual mistake by the parties; that the plaintiff breached the covenant of good faith and fair dealing; that the plaintiff has waived its right to collect rent at the holdover rate after November 1, 1988; that the increased rent for holding over represents a penalty and is against public policy; that the plaintiff failed to return a security deposit; that the plaintiff violated the covenant against quiet enjoyment; that the provision for attorney's fees CT Page 3811 in the overlease does not apply to the defendant; and that the plaintiff's conduct violated General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
The case was referred to Attorney Trial Referee William J. Murray, in accordance with General Statutes § 52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a trial and then filed his report containing the following findings of fact: (1) that the plaintiff claims rent for October of 1988 at the rate specified in the sublease, $13,125 annually, plus additional rent of $876 per year, and rent at the holdover rate for the next four months until February 28, 1989, when the defendant vacated the demised premises; (2) that the defendant made timely payments of rent and additional rent for eleven months, without complaining about lack of benefits and services; (3) that the defendant did not notify the plaintiff that he wished to renew after the expiration of the lease on October 31, 1988, as provided in the sublease; (4) that the sublease provided for an automatic holdover rate of $26,250 annually if the tenant did not vacate at the end of the lease term; and (5) that the sublease itself did not provide for either interest on unpaid rent or attorney's fees.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that because the parties made an attempt to resolve their disputes about the level of services being afforded to the defendant, the automatic holdover provision should not be invoked, and the defendant should pay the rent specified in the original sublease for the four months he remained on the premises after the least term expired; (2) that the intent of the provisions in the sublease, that it was subject to the overlease and that the provisions of the overlease were to be part of the sublease, was to insure that the subtenant, the defendant herein, understood the provisions of the overlease, and was obliged to not violate any such provision, not to subject him to the provisions regarding interest on unpaid rent and attorney's fees; (3) that the monthly rent and additional rent for the four months that the defendant remained on the premises after his sublease terminated amounted to $5,833.75; (4) that the defendant also owed $5,034.91 for use of certain services provided by the plaintiff; (5) that the defendant was entitled to a credit for his security deposit of $1,093.75, and thus the referee recommended that a judgment enter in favor of the plaintiff for $9,774.91; and (6) that the defendant had failed to prove any of his special defenses or counterclaim. CT Page 3812
The defendant did not file any motions with respect to the referee's report, but the plaintiff moved, pursuant to Practice Book § 438, to correct the report to reflect that: (1) the rider to the sublease provided that if the defendant held over after the sublease expired, he would automatically be obliged to pay increased rent at the rate of $2,187.50 per month; (2) the terms of the overlease were incorporated into the sublease, since the sublease provided that it was "subject to" the overlease, and that its provisions were "made a part of" the sublease; (3) the defendant was obliged to pay a reasonable attorney's fee to the plaintiff because the overlease so provided, and that its terms were incorporated by reference in the sublease; and (4) the plaintiff was entitled to interest because the overlease so provides in the event of a default in the payment of rent, and the terms of the overlease were incorporated in the sublease.
In response to the motion to correct, the attorney trial referee declined to make any changes in his recommendations, and reiterated his conclusions that: (1) because the defendant had notified the plaintiff that certain problems existed with respect to the level of services being provided to him, and said problems were never resolved, the defendant was entitled to remain on the subject premises at the original rent, rather than the renewal or hold-over rate; and (2) the parties did not intend to incorporate the provisions of the overlease, including the payment of interest on unpaid rent and attorney's fees, into the sublease and therefore the defendant was not obliged to pay interest or attorney's fees.
As to this court's standard of review of an attorney trial referee's findings of the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Town of Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Thus, generally this court's task consists of, first, determining whether "there was . . . evidence to support the attorney trial referee's factual findings," and, second, whether "the conclusions reached were in accordance with the applicable CT Page 3813 law. Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991).
In the present case, the plaintiff did not file any exceptions to the report. Practice Book § 439. It follows therefore that the factual findings by the referee must stand uncorrected because a failure to file exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." See Bernard v. Gershman,18 Conn. App. 652, 655, 559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings).
The plaintiff did file objections to the report in accordance with Practice Book § 440.[1] The first objection relates to the referee's conclusion that while the defendant remained on the premises after the lease had expired, the was a tenant "at will" and hence was obliged only to pay the original rent, not the increased rent for holding over. This conclusion was based upon his finding that the parties were attempting to resolve their difficulties as the lease neared its end and thereafter as well. The second objection relates to the referee's conclusion that despite the language in the sublease that it was subject to, and incorporated by reference the terms of the overlease, the parties never had a meeting of the minds or assented to the incorporation of the provisions in the overlease regarding interest and attorney's fees into the sublease. The plaintiff claims that since all the terms of the overlease were incorporated in the sublease, it is entitled to interest on the unpaid rent and to attorney's fees.
The trial court must accept the referee's findings of fact in the absence of valid exceptions to the report, and therefore its task is limited to determining whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra,18 Conn. App. 656; Practice Book § 440. In the present case, the first issue concerns the amount of rent to be paid by the defendant during the holdover period. As to the recommendation of the referee that the defendant is obliged to pay only the original rent during such period, the sublease itself clearly provides that it includes the "Rider" and in that rider, as quoted previously, is an explicit provision to the effect that if the tenant remains on the premises after the one year lease CT Page 3814 expired, as the defendant did for four months, the tenant is obliged to pay rent at an increased rate. This provision cannot be ignored or rewritten to include an exception in the event the tenant and subtenant were negotiating possible terms of a renewal, because the sublease clearly states that its terms may only be changed by a writing. Although the referee's factual findings are accepted, it nevertheless appears that his conclusion that the defendant was obliged to pay rent only at the original rate is incorrect as a matter of law. "A referee's determinations of law in his or her report are not binding on the court . . . the trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . [t]he trial court [has] the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.)Dills v. Enfield, supra, 210 Conn. 713.
The second issue involves the referee's recommendation regarding interest and attorney's fees. The referee found as a fact that the parties did not intend to incorporate in their lease the provisions of the overlease regarding interest and attorney's fees. The finding by the referee that the parties did not intend to incorporate the provisions of the overlease relating to interest on unpaid rent and attorney's fees was based at least in part on the testimony of the witnesses, and accordingly should not be disturbed. "The referee was obliged to ascertain the intent of the parties and what the parties intended to include in their [agreement] is a question of fact. . . . Absent clear error, [the court] will not disturb the trier's factual findings." (Citation omitted; internal quotation marks omitted). Flaxman v. Interbrands Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket no. 117731 (April 5, 1994, Lewis, J.).
The conclusions regarding interest and attorney's fees follow logically from the referee's findings of fact. Evidence to the contrary was most likely presented at trial, but "[w]here evidence is in conflict, its probative value is for the trier of fact to determine." Bernard v. Gershman, supra, 656. It appears from reviewing the plaintiff's motion to correct, and its objections to the report, that the plaintiff is attempting to substitute its own version of the facts for those found by the referee, a practice discountenanced in Argentinis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds, CT Page 3815219 Conn. 151, 592 A.2d 375 (1991).
The attorney trial referee's conclusions regarding interest and attorney's fees appear to be legally and logically correct, and the court agrees with his recommendations on these issues. No material error in this regard has been found in the referee's report, nor is there any other sufficient reason why the report is unacceptable. Practice Book § 443. The court finds that, in the words of Practice Book § 440, the referee's recommendations were "properly reached on the basis of the subordinate facts found."
Thus, judgment enters for the plaintiff to recover from the defendant rent for October, 1988 at the original rent of $1,093.75, and for the four holdover months at the rate provided in section 5 of the rider to the sublease, ie., $2,187.50, for a total of $9,843.75, plus the agreed upon monthly service fee of $73 for each of five months, and, as previously determined by the referee, the sum of $5,043.91 for additional services, less the security deposit of $1,093.75, for a total judgment of $14,158.91.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of April, 1995.
William B. Lewis, Judge