### KATHARINE MCHUGH *v.* THOMAS M. MCHUGH
### (10609)

DALY, LANDAU and FREEDMAN, Js.

Argued April 1—decision released June 9, 1992

*Suzanne E. Caron,* for the appellant (plaintiff).

*James E. Sulick,* with whom, on the brief, was *James H. Howard,* for the appellee (defendant).

FREEDMAN, J. The plaintiff appeals from the judgment granting her motion to modify the defendant's child support obligation. The plaintiff claims that the trial court improperly (1) deviated from the child support guidelines, and (2) failed to conduct a full and fair hearing. We reverse the judgment of the trial court.[1]

The marriage of the parties was dissolved on September 21, 1981, at which time there were two minor

---

[1] Because we agree with the plaintiff on the first issue, we need not address the second issue. Our declining to address the second issue should not, however, be taken as expressing an opinion regarding the propriety of the manner in which the proceeding was conducted.

children issue of the marriage. The terms of the decree were based on a written agreement of the parties dated September 21, 1981, which the court found to be fair and equitable. Although the agreement was not incorporated by reference in the decree, the operative provisions are contained in the judgment file. The decree provided in relevant part that the parties were to have joint custody of the minor children and that the primary residence of the minor children was to be with the plaintiff. In addition, the decree provided for the defendant to pay unallocated alimony and support to the plaintiff, the amount of which declined as the years went by and declined further in the event of the remarriage of the plaintiff or the emancipation of the children.

In May, 1991, the plaintiff filed a motion for modification in which she alleged a substantial change in the circumstances of the parties.[2] At that time, one child had reached majority, the remaining child was thirteen years old and the plaintiff had remarried. There had been no intervening modifications of the decree and, in accordance with its terms, the defendant was then paying to the plaintiff the sum of $333.33 per month, approximately $77 per week, which was still labelled as unallocated alimony and support.

When the parties appeared before the court on the plaintiff's motion for modification, the trial court had before it the original decree, the financial affidavits filed at the time the marriage was dissolved and the par-

[2] General Statutes § 46b-86 (a) provides in pertinent part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be . . . modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

ties' current financial affidavits. The trial court commenced the proceeding by asking the plaintiff's attorney to state the substantial change of circumstances. Thereafter, a dialogue ensued between the court and the plaintiff's attorney regarding the alleged change in circumstances, the amount the plaintiff claimed to be due under the child support guidelines, the past and current income of the plaintiff and the age of the minor child. The trial court then invited comments from the defendant's attorney. The dialogue between the trial court and the defendant's attorney focused on the defendant's payment for the oldest child's college education, the defendant's expenses related to visitation with the children, the tax benefits of an unallocated order, the parties' current marital status, and other matters relating to the original decree and the parties' current status.

After this colloquy between the court and the defendant's attorney, the trial court then questioned the plaintiff, who was not under oath, about the defendant's relationship with the minor child, the plaintiff's current living situation and her need for additional child support.[3] Thereafter, there was some further brief dia-

---

[3] The dialogue between the court and the plaintiff was as follows:

"The Court: Mrs. McHugh, how does he get along with his thirteen-year-old daughter?

"Plaintiff: I am not really able to answer that.

"The Court: I can't hear you.

"Plaintiff: I am not able to answer that.

"The Court: You're not able to? Why?

"Plaintiff: Because I don't do—from my point of view—

"Ms. Caron: What is your impression of how they get along? I know you can't say specifically how they get along. What is your impression?

"Plaintiff: I would say, since she's a teenager, it is a normal relationship. She—

"The Court: Does he send her birthday presents?

"Plaintiff: Yes, he does.

"The Court: Does he talk to her on the telephone?

"Plaintiff: Yes, he does.

"The Court: Does he visit her? Or she visit him?

logue between the attorneys and the court at which point the trial court stated "Okay, I've heard enough." The defendant's attorney then made a comment regarding the tax exemption for the child and the trial court stated "I've heard enough. I've heard enough. $110 a week." The defendant's attorney then inquired if the order was in contemplation of the guidelines,[4] and the court responded by stating: "That is taking every factor that was mentioned to me today into consideration."

The plaintiff first claims that the trial court improperly deviated from the child support guidelines. We agree. General Statutes § 46b-215b provides that the child support guidelines shall be considered in all determinations of child support amounts.[5] It further provides

"Plaintiff: She visits him.

"The Court: Does he get her gifts for Christmas?

"Plaintiff: Yes, he does.

"The Court: Has he been generous?

"Plaintiff: No.

"The Court: And you feel you really need all of this additional money?

"Plaintiff: Yes, I do.

"The Court: Do you have a new family?

"Plaintiff: I have a new husband, and he has a daughter.

"The Court: And how old is your step-daughter?

"Plaintiff: She is fifteen.

"The Court: Does she live there?

"Plaintiff: No, not any more."

[4] At the commencement of the hearing, the attorney for the plaintiff stated to the court that a strict application of the child support guidelines would call for an order of child support in the amount of $287 per week. The defendant did not dispute this calculation and the court did not pursue the issue of the calculation any further.

[5] General Statutes § 46b-215b (a) provides: "The child support guidelines promulgated pursuant to section 8 of public act 85-548 and any updated guidelines issued pursuant to section 46b-215a shall be considered in all determinations of child support amounts within the state. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the commission under section 46b-215a, shall be sufficient to rebut the presumption in such case."

that "[i]n all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered." This presumption, however, may be rebutted by "[a] specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case" as determined by the application of the deviation criteria established in the guidelines.

We have previously held that "unless there is a specific finding on the record that would allow the presumption to be rebutted, child support awarded must be in the amount provided by the guidelines." *Savage* v. *Savage*, 25 Conn. App. 693, 698, 596 A.2d 23 (1991). Here the trial court made no such finding.

The requirement of a specific finding on the record that the application of the guidelines would be inequitable or inappropriate when the amount awarded deviates from the amount resulting from the application of the guidelines, as determined by the application of the deviation criteria established in the guidelines, becomes even more compelling in light of the 1990 amendment to General Statutes § 46b-86 (a). The amendment added as an additional ground for modification a showing that the order sought to be modified "substantially deviates from the child support guidelines . . . *unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate.*" (Emphasis added.) This amendment applies retroactively to all previous orders of child support including those entered before there were any guidelines. *Turner* v. *Turner*, 219 Conn. 703, 718, 595 A.2d 297 (1991). It follows, therefore, that once the court enters an order of child support that substantially deviates from the guidelines, and makes a specific finding that the application of the amount contained in the guidelines would be inequitable or inap-

propriate, as determined by the application of the deviation criteria established in the guidelines, that particular order is no longer modifiable solely on the ground that it substantially deviates from the guidelines.[6] By the same token, in the absence of such a specific finding, the order is continually subject to modification on the ground of a substantial deviation from the guidelines. Such specific finding, therefore, has very real and meaningful consequences and must be made by the court anytime the court enters a child support award that deviates from the child support guidelines.

We conclude, therefore, that the trial court improperly deviated from the child support guidelines in the absence of a specific finding on the record that application of the guidelines would be inequitable or inappropriate according to the deviation criteria established in the guidelines.

The judgment is reversed and the case is remanded to the trial court for a new hearing on the motion to modify.

In this opinion the other judges concurred.

---

[6] Public Acts 1991, No. 91-76, § 1, effective May 9, 1991, amended General Statutes § 46b-86 (a) to provide that "[t]here shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. . . ."